# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT T. ROGERS, | ) 1:08cv01334 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Scott T. Rogers ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 6, 2008, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his applications on November 23, 2005, alleging disability since November 23, 2005,[3] due to rheumatoid arthritis. AR 59-61, 73-78, 160-162. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 40, 43-47, 52-56. ALJ Edward Graham held a hearing on August 28, 2007, and denied benefits on September 11, 2007. AR 12-24, 164-180. On July 23, 2008, the Appeals Council denied review. AR 4-7.

Hearing Testimony

ALJ Graham held a hearing on August 28, 2007, in Palmdale, California. Plaintiff appeared with his attorney, Shaneela Kahn. Vocational expert ("VE") Randi Hetrick also appeared and testified. AR 164.

Plaintiff testified that he was 33 years old at the time of the hearing and completed the eighth grade, with some special education classes. AR 167-168. He can read and write, but it takes him a while to do math in his head. AR 168-169.

Plaintiff last worked in 2001. AR 168. He testified that he could not work now because he has "a lot of swelling and stiffness when [he] wakes up" in all his joints. AR 169-170. He also has a hernia that causes pain down to his groin. AR 170. Plaintiff believed he has developed depression and is on an antidepressant. AR 170. He also has panic attacks three or four times a month. AR 170. Plaintiff testified that he was pain-free for five days a month, during which time he can help his mother with the dishes or do some light housework. On his bad days, he lays in bed all day. AR 171. His mother sometimes helps him get dressed. Plaintiff does not drive. AR 172.

Plaintiff takes three pain medications that cause him to get tired "from time to time." The medication helps, but not always. AR 172. He has a hospital bed that adjusts to different

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff was last insured for disability insurance benefits on December 31, 2001. Plaintiff did not present any evidence prior to that date, however, and he amended his alleged onset date to November 23, 2005, the date he filed his supplemental security income application. AR 166-167.

1  positions. He estimated that out of a 12 hour day, he lays down for at least 8 to 9 hours. AR 173.
2  Plaintiff could not be "up" for more than 15-20 minutes before needing to sit or lay down. AR
3  173. If he sits too long, his back and legs become uncomfortable. AR 174.

4  The ALJ then questioned the ALJ. He asked the ALJ to assume a person of Plaintiff's
5  age, education and work experience who could perform sedentary work with mild pain. The VE
6  testified that this person would be able to do unskilled sedentary work. Examples would be
7  assembly work, food processing and manual work. AR 176.

8  Plaintiff's attorney asked the VE about the lifting requirement of these positions. The VE
9  explained that these positions required "very, very light lifting," defined as lifting of under five
10 pounds. AR 177. The positions would also have a sit/stand option. AR 177. The positions
11 would require more than occasional fine motor manipulation. AR 177.

12 Plaintiff's attorney asked the VE to assume an additional limitation to the original
13 hypothetical of a person who could perform fine manipulation only 50 percent of the day. The
14 VE testified that this person could not perform the previously identified jobs. AR 177-178.

15 Finally, the ALJ asked Plaintiff why he had not his hernia surgically corrected. He stated
16 that he didn't have any insurance and the surgeon told him that without it, he could not have the
17 operation. He testified that he was "turned away." AR 179.

18 Medical Record

19 On November 22, 2005, Plaintiff saw Ashmead Ali, M.D., and complained of chronic
20 pain in his joints and swelling. On examination, he had synovitis in his hands and wrists and
21 effusion in his knees. AR 134. Dr. Ali diagnosed arthralgias in his knees, hands and wrists. AR
22 134.

23 In December 2005, and January 2006, Plaintiff returned to Dr. Ali. and complained of
24 chronic pain. He diagnosed arthralgias of unknown etiology. AR 131-133.

25 On March 21, 2006, Plaintiff saw Syed Amjad Hasan, M.D., at Lancaster Rheumatology
26 and Osteoporosis Center. Plaintiff complained of a long history of joint aches and pain that has
27 been getting worse. Plaintiff reported that he had pain and aches all over. Plaintiff was taking
28 Valium and Oxycontin but continued to have pain. His lab work revealed an elevated

rheumatoid factor at 49, with normal being less than 44. He had multiple soft tissue tender points all over. No significant joint effusion or synovitis was noted. Dr. Hasan diagnosed fibromyalgia and started Plaintiff on medications. He also ordered further testing. AR 111-112.

On April 25, 2006, Plaintiff returned to Dr. Hasan and complained of generalized arthralgias, fatigue, poor sleep and generalized achiness. Dr. Hasan noted that the additional lab work was normal, including negative rheumatoid factor and negative lupus panel. On examination, he had "multiple soft tissue tender points allover," but no joint synovitis. All joints had good range of motion. Dr. Hasan believed that Plaintiff's symptoms were consistent with fibromyalgia. His medications were adjusted. In response to Plaintiff's statement that he could not work, Dr. Hasan told him to contact social security. AR 110.

On June 12, 2006, State Agency physician G.W. Bugg, M.D., completed a Physical Residual Functional Capacity Assessment. He opined that Plaintiff could occasionally lift 50 pounds, 25 pounds frequently, could stand and/or walk about six hours and could sit for about six hours. Plaintiff could occasionally climb, crouch and crawl, but could frequently balance, stoop, and kneel. He had no manipulative, visual, communicative or environmental limitations. AR 116-123.

On August 10, 2006, Dr. Ali completed a Fibromyalgia Residual Functional Capacity Questionnaire. He had been seeing Plaintiff monthly for one year and found that he met the American College of Rheumatology criteria for fibromyalgia. His prognosis was poor. In support of his opinion, Dr. Ali noted the clinical findings of 16/16 positive trigger points. He also noted that Plaintiff suffered from nonrestorative sleep, chronic fatigue syndrome, morning stiffness, muscle weakness, subjective swelling, numbness and tingling, anxiety, panic attacks and depression. Dr. Ali opined that Plaintiff could never lift more than 10 pounds and could rarely twist, stoop, crouch/squat or climb. Plaintiff also had significant limitations with reaching, handling or fingering, i.e., he could use his arms, hands and fingers for grasping, fine manipulation or reaching overhead 50 percent of the time. Plaintiff's impairments would produce good days and bad days and Dr. Ali believed he would be absent from work more than four days a month. Dr. Ali explained that Plaintiff had constant pain all over his body and that

his pain would frequently interfere with his ability to concentrate.  He also believed that Plaintiff was incapable of even a low stress job.  Dr. Ali opined that Plaintiff could walk 1/4 of a block without rest, could sit for 45 minutes at once, and could stand for 20 minutes at once.  He could sit for less than two hours total and could stand/walk for less than two hours total.  Dr. Ali believed that Plaintiff has been impaired since November 18, 2005.  AR 126-130.

May 23, 2007, x-rays of Plaintiff's knees were normal.  AR 152-153.

On May 26, 2007, Plaintiff saw Dean Chiang, M.D., for a consultive internal medicine examination.  He complained of chronic joint pain.  Plaintiff reported daily pain in his knees, elbows and fingers.  He was taking Amitriptyline, Oxycodone, Vicodin and Diazepam.  Plaintiff appeared as a well-developed, well-nourished and muscular man.  He could ambulate on his own and sit comfortably during the examination.  He was able to get on and off the examination table, and remove articles of clothing, without difficulty.  On examination, he had a mild reducible umbilical hernia.  Overall, Plaintiff had good muscle bulk and tone without any spasms, tenderness or atrophy.  There were no joint deformities and there were no signs of active synovitis such as swelling, increased warmth, decreased range of motion, redness or effusions.  AR 147-150.

Dr. Chiang diagnosed chronic arthralgia with unknown etiology, with no history or current evidence of synovitis.  He also had a history of otitis, currently unremarkable, and a mild abdominal umbilical hernia that is reducible.  Based on his joint examination, Plaintiff did not appear to have any limitations with standing, walking or sitting. His fatigue may decrease his tolerance so that he is able to stand, walk and sit for approximately six hours a day.  Due to his hernia, Plaintiff could not lift and carry more than five pounds and needed to refrain from frequent bending, stooping, crouching and squatting.  He had no manipulative limitations.  AR 150.

Also on May 26, 2007, Dr. Chiang completed a Medical Source Statement, opining that Plaintiff could never lift or carry up to 10 pounds, and could sit, stand and walk without interruption for 8 hours each.  He could use his hands and feet continuously, and could also

1   climb, balance, stoop, kneel, crouch and crawl continuously.  Dr. Chiang concluded that these
2   limitations would last for more than 12 months.  AR 154-159.
3        ALJ's Findings
4        The ALJ first set forth the relevant period of time as November 23, 2005, Plaintiff's
5   amended alleged onset date, through the date of his decision.  During that time, the ALJ found
6   that Plaintiff had the severe impairments of arthralgias of unknown etiology, possible
7   fibromyalgia and a mild, reducible umbilical hernia.  Despite these impairments, the ALJ
8   determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary
9   work that would not require him to lift and carry more than five pounds.  With this RFC, the ALJ
10  noted that Plaintiff had no past relevant work, but could perform a significant number of jobs in
11  the national economy and was therefore not disabled.  AR 17-23.

## SCOPE OF REVIEW

13  Congress has provided a limited scope of judicial review of the Commissioner's decision
14  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
15  the Court must determine whether the decision of the Commissioner is supported by substantial
16  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"
17  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
18  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
19  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at
20  401.  The record as a whole must be considered, weighing both the evidence that supports and
21  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,
22  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must
23  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
24  This Court must uphold the Commissioner's determination that the claimant is not disabled if the
25  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
26  substantial evidence.  See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
27  Cir. 1987).
28

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (arthralgias of unknown etiology, possible fibromyalgia and a mild, reducible umbilical hernia) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 17-23.

Here, Plaintiff argues that (1) the ALJ improperly evaluated the medical evidence; and (2) the step five finding was not supported by substantial evidence.

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

**DISCUSSION**

A.   Analysis of Medical Evidence

Plaintiff contends that the ALJ improperly evaluated the medical evidence by misunderstanding Dr. Chiang's opinion and failing to articulate sufficient reasons for rejecting Dr. Ali's opinion.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray,* 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).

8

Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

In assessing the opinion evidence, the ALJ gave the most weight to Dr. Chiang, the consultive examiner, and gave no weight to Dr. Ali's opinion that Plaintiff was severely limited. Plaintiff does not necessarily contest the ALJ's stated reasons for doing so, but rather contends that the ALJ misunderstood Dr. Chiang's sitting, standing and walking limitations. Had the ALJ set forth Dr. Chiang's restrictions correctly, Plaintiff believes that Dr. Chiang's limitations would have supported those of Dr. Ali.

Specifically, Plaintiff contends that the ALJ incorrectly found that Dr. Chiang opined that Plaintiff was limited to "standing **and/or** walking for 6 hours of an 8 hour workday **and** sitting 6 hours of an 8 hour workday." AR 20. Instead, Plaintiff believes that Dr. Chiang opined that Plaintiff could stand, sit and walk for a total of 6 hours.

9

Although Dr. Chiang stated in his report that Plaintiff's "fatigue may decrease his tolerance so that he is able to stand, walk and sit for approximately six hours a day," the record supports the ALJ's interpretation that Plaintiff could stand and/or walk for six hours and could sit for six hours. AR 150. Prior to limiting Plaintiff based on fatigue, Dr. Chiang stated, "From a medical perspective, the claimant does not appear to have any limitations with standing, walking or sitting." AR 150. Indeed, Dr. Chiang's examination revealed Plaintiff to be a well-developed, well-nourished and muscular man. Plaintiff had good muscle bulk and tone without any spasms, tenderness or atrophy. There were no joint deformities and there were no signs of active synovitis such as swelling, increased warmth, decreased range of motion, redness or effusions. AR 147-150. When an examining physician provides 'independent clinical findings that differ from the findings of the treating physician, such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632.

More importantly, when Dr. Chiang completed the accompanying Medical Source Statement, he specifically noted that Plaintiff could sit for 8 hours, stand for 8 hours and walk for 8 hours. AR 155. The State Agency physician also supports the ALJ's finding. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (the findings of a nontreating, nonexamining physician can amount to substantial evidence so long as other evidence in the record supports the findings).

In any event, the ALJ correct explained that Dr. Ali's severe limitations were not supported by the medical record, which contained very little objective findings. Indeed, Dr. Ali essentially opined that Plaintiff was unable to perform any activities related to working. AR 20. According to Dr. Ali, Plaintiff could not lift any weight, could rarely perform postural movements, could not stand/walk for more than two hours total and could not sit for more than two hours total. AR 126-130. Certainly, Plaintiff's impairments are expected to cause some limitations, which the ALJ acknowledged by limiting Plaintiff to sedentary work with lifting restrictions, but such severe restrictions are not supported in light of the minimal clinical and laboratory findings.

To the extent Plaintiff points to his testimony related to his fatigue, the ALJ found him not credible and he does not challenge that finding. In any event, Plaintiff testified that gets tired "from time to time., a little tired." AR 172.

Accordingly, the ALJ's treatment of the medical opinion evidence was supported by substantial evidence and free of legal error.

B.   Step Five Finding

Plaintiff next argues that the ALJ failed to ask the VE about the deviation from the Dictionary of Occupational Titles ("DOT"). Plaintiff argue that the positions identified require lifting of up to 10 pounds, which is more than his RFC allows for.

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Massachi,* 486 F.3d at 1153. Where the ALJ fails to ask the VE is the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.*

Here, the ALJ found that Plaintiff retained the ability to lift and carry up to five pounds. Given this limitation and the others set forth in the hypothetical, the VE testified that this person could perform unskilled sedentary work. Examples included assembly work, food processing and manual work. AR 176. Such work included the positions of lens inserter, final assembler, fishing rod assembler, almond blancher, nut sorter, and jewelry setter. The ALJ ultimately adopted the VE's testimony and found that Plaintiff could perform a significant number of jobs in the national economy. AR 24.

Contrary to the ALJ's statement in his decision, the VE's testimony was not consistent with the DOT because the positions identified require the ability to lift/carry up to 10 pounds occasionally. *See* Exh. 1, attached to Opening Brief; AR 24. However, the failure to ask about a

conflict is harmless where "the vocational expert ... provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi,* 486 F.3d at 1154, n. 19. Although the ALJ did not specifically ask whether a conflict existed, Plaintiff's attorney asked the VE about the lifting requirements for the positions identified. AR 177. In response, the VE testified that the lifting requirement was "very, very light." The VE specified that the lifting requirements for jewelry setter, nut sorter and the assembly positions were under five pounds, including the necessary tools. AR 177.

The VE therefore provided sufficient support for the conclusion so as to justify any conflicts. The ALJ's step five finding was supported by substantial evidence and free of legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Scott Rogers.


IT IS SO ORDERED.

Dated:   **August 20, 2009**              **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE